■ DOLORES E. THORNDIKE, as Executrix of FRANCES M. RUF, Deceased, et al., Respondents, and PATRICIA A. SWARTHOUT, Respondent-Appellant, v WILBURT J. COOMBES, Respondent, and JAMES SKORDY et al., Appellants-Respondents. (Appeal No. 1.)—Judgment unanimously reversed, on the law and facts, in accordance with memorandum, with costs to defendant Hurst only, and otherwise costs to abide the event; cross appeal dismissed as moot. Memorandum: These are cross appeals from jury verdicts in consolidated automobile negligence actions in which the plaintiffs Swarthout, Sedlmayer and Holloran sought damages for personal injuries and plaintiff Thorndike sought damages for the wrongful death of decedent, Ruf. At the time of the accident, the four women were riding in a vehicle operated by plaintiff Sedlmayer which collided with a loaded dump truck owned and operated by defendant Coombes. The jury returned verdicts of $25,000 in favor of plaintiff Swarthout, $150,000 in favor of plaintiff Sedlmayer, $250,000 in favor of plaintiff Holloran, and $18,000 in the Thorndike wrongful death action and against all defendants. All defendants except Coombes appeal, contesting the findings on negligence, proximate cause, excessiveness and apportionment, and citing various legal errors by the court for our consideration. Plaintiff Swarthout cross-appeals from the denial of her motion to amend the *ad damnum* clause in her complaint after the verdict was reported. We reverse the judgment and dismiss the cross appeal as moot. The accident occurred on Route 17, east of the Village of Wellsville at about 4:00 P.M. on September 18, 1969. At the time, defendants Hurst and Skordy were traveling east in separate vehicles. They stopped their vehicles in their own lane of travel, intending to turn left into the Wellsville Motel where they were staying the night, and waited for the westbound Sedlmayer vehicle to pass. Coombes' truck was proceeding easterly behind Hurst and Skordy and when Coombes came upon the stopped vehicles in his lane of travel, he turned left into the westbound lane and collided with the Sedlmayer vehicle. At the time of the accident Route 17 was a paved two-lane highway marked by a broken white line. The accident occurred on a concrete bridge located west of the motel. The road is generally straight and level but near the scene of the accident it curves slightly to the north and the road dips on each side of a bridge. The area is open and visibility was good on this clear and sunny day. The Wellsville Motel is located north of the highway and is approached by a semicircular driveway. One entrance to the motel was near

the bridge, at the point where Hurst and Skordy stopped, and the other entrance was 150 to 250 feet further east. The collision occurred entirely in the westbound lane of travel on the pavement of the narrow concrete bridge which formed part of the highway. Shortly before the accident, Hurst and Skordy had entered Route 17 after finishing their day's work. They were operating separate vehicles and upon approaching the westerly driveway entrance of the motel, Hurst, who was first in line, activated his turn signal and stopped his car opposite the driveway to wait for the westbound Sedlmayer vehicle 325 to 350 feet away to pass. Skordy stopped about 8 to 10 feet behind Hurst, intending to turn left into the driveway also. The rear portion of Skordy's vehicle was on the bridge. Hurst testified variously that he was stopped 5 to 10 seconds before the impact between the Coombes truck and the Sedlmayer vehicle and Skordy testified that he was stopped 3 to 10 seconds before the impact. Both Skordy and Hurst testified that their turn signals were operating when they stopped but Coombes testified that he saw no brake or signal light on the rear of the Skordy car and that he did not see the Hurst car. Coombes had entered Route 17 about a half mile from the accident scene and proceeded easterly at some distance behind Hurst and Skordy. His visibility was unobstructed for about 1,000 feet and as he approached the scene of the accident there was no other traffic except Skordy and Hurst and the westbound car in which the plaintiffs were riding. He recalled that he first noticed Skordy's car when it was 150 to 200 feet ahead of him and stopped on the bridge. He did not realize Skordy was stopped until he was 100 to 150 feet from Skordy's car, however, at a time when he was traveling 30 to 35 miles per hour. He testified to two versions of the accident. He testified at the trial that when he realized the Skordy vehicle was stopped he slammed on his brakes and downshifted but could not stop in time to avoid driving into the rear of Skordy's vehicle. Unable to go the right because of the bridge abutment, he turned to the left striking the left rear of Skordy's vehicle and immediately colliding with the front of the Sedlmayer vehicle. He did not see the Sedlmayer vehicle until the moment of impact. On cross-examination he admitted to another explanation for the accident given during preliminary proceedings in the case: that he saw the Sedlmayer vehicle before impact but that he had pulled into the westbound lane thinking he could safely pass the stopped Skordy vehicle and return to the eastbound lane before the Sedlmayer vehicle reached him. Upon this evidence, the jury found verdicts in favor of all the plaintiffs and against all defendants and apportioned fault 30% to Coombes, 20% to Skordy, and 50% to Hurst. Defendant D. L. Peterson Trust, owner of the Hurst and Skordy vehicles, and Honeywell, Inc., the lessor of the vehicles and the employer of Hurst and Skordy, became derivately liable for 70% of the total verdicts awarded. This case has been before us once before (49 AD2d 701) when we affirmed Special Term's denial of defendants' motions for summary judgment and directed that the case proceed to trial. Plaintiffs cite that ruling, as well as the trial evidence, and urge that the issues are entirely factual and were properly resolved by the jury. The prior decision on summary judgment was concerned only with issue finding, however, not issue determination, and it is not res judicata or the law of the case on the trial of this appeal (Sackman-Gilliland Corp. v Senator Holding Corp., 43 AD2d 948; Aufiero v New York Life Ins. Co., 74 NYS2d 277, 279, affd 274 App Div 928; see Jenks v McGranaghan, 30 NY2d 475, 479). Plaintiffs contend first that Hurst and Skordy were negligent because they had a duty to proceed to the most easterly entrance to the motel, so that Skordy's vehicle would not block the bridge. The apportionment findings would

suggest that the jury accepted this contention and that it held Hurst responsible because he started the chain of events leading to the accident. Hurst had no legal duty to proceed to the most easterly driveway, however, and he was not negligent because he failed to do so. Neither motel driveway was marked "entrance" or "exit". The left turn into the driveway near the bridge was lawful and it was clearly reasonable for Hurst to attempt to enter the driveway at the first entrance at which he arrived, particularly since visibility in both directions was excellent and Hurst might fairly suppose that approaching motorists would be aware of his stop. Similarly, Skordy, arriving after Hurst, conducted himself reasonably in stopping his vehicle behind Hurst to await passage of the approaching vehicle or to enter the motel after Hurst at the westerly driveway. Related to this point is plaintiff's contention that Skordy violated section 1202 of the Vehicle and Traffic Law in that he stopped his vehicle partly on the bridge and that that violation constituted negligence. The language of the section exempts Skordy from a finding of negligence based upon the statute, however, for it prohibits stops on bridges "Except when necessary to avoid conflict with other traffic [etc.]". Since Hurst was ahead of him, Skordy had no reasonable alternative but to stop on the bridge, particularly when he had no basis to anticipate an accident. The circumstances of the case bring him within the exception of the statute. Next, plaintiffs contend that Hurst and Skordy stopped suddenly on the highway and did so without properly signaling to Coombes' following vehicle. However, both drivers testified that they knew where they were going and that they slowed down gradually, activating their turn signals before stopping. The only other evidence concerning the operation of the Hurst or Skordy vehicles came from Coombes who did not see Hurst's car and who did not testify that Skordy stopped suddenly. The evidence does not support a verdict based upon a sudden stop and the trial court erred in charging the jury that it could find these defendants had violated subdivision (c) of section 1163 of the Vehicle and Traffic Law. There remains the testimony of Coombes that Skordy did not signal before stopping or while he was stopped and the verdicts against him necessarily rest upon the conflicting evidence on this point. Skordy's counsel contends that even if Skordy negligently failed to signal his intention to turn, such negligence was not the proximate cause of the injuries and that the gross negligence of Coombes in turning directly into the path of the Sedlmayer vehicle was an intervening cause which was not foreseeable by Skordy and which insulated him from liability for plaintiffs' damages. The failure of Coombes to observe the stopped Skordy vehicle and the evasive action he took to avoid striking it were normal consequences of Skordy's alleged negligence and not extraordinary or unforeseeable. It is for the jury to say whether Skordy signaled and if not, whether the actions of one or both of the drivers were the proximate cause of the accident (see, generally, *Saugerties Bank v Delaware & Hudson Co.,* 236 NY 425; *Pagan v Goldberger,* 51 AD2d 508, 510-511; cf. *Sheehan v City of New York,* 40 NY2d 496; *Tsitsera v Hudson Tr. Corp.,* 14 NY2d 855). In view of our reversal, we have no occasion to consider excessiveness of the verdict in the wrongful death action or several other points raised in the briefs. Since there will be a new trial, however, we comment briefly on the court's charge. It was balanced and stated the pertinent principles of law but after this lengthy trial it would have been helpful if the court had summarized the facts and contentions of the parties and specified to which operators the various principles of law and statutory sections applied. Thus, the court charged the doctrine of intervening cause generally, although it

obviously had no application to Coombes since only Skordy and Hurst benefited from the rule, and the emergency doctrine, while correctly charged, applied only to Coombes and not the other drivers. Section 1129, subdivision (c) of section 1163 and section 1202 (subd [a], par 1, cl g) of the Vehicle and Traffic Law should not have been charged upon the evidence before the court. The judgment against defendants Skordy, D. L. Peterson Trust Co., and Honeywell, Inc., is reversed and a new trial granted. The judgment against the defendant Hurst is reversed and the complaints dismissed as to him. The cross appeal is dismissed as moot. (Appeals from judgment of Allegany Supreme Court—negligence action.) Present—Moule, J. P., Cardamone, Simons, Hancock, Jr., and Denman, JJ.